NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| POLY SYSTEMS USA, INC. | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 11-cv-4588 (DMC-JAD) |
| ALBERMARLE CORPORATION, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the motion of Defendant Albermarle Corporation ("Defendant" or "Albermarle") for Transfer to the United States District Court, Middle District of Louisiana, pursuant to 28 U.S.C. § 1404(a). ECF No. 12. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's Motion is **granted**.

### I. BACKGROUND

The present Motion in this contract dispute requires the Court to determine whether, for the convenience of the parties and witnesses, and in the interests of justice, this matter should be transferred from this District to the Middle District of Louisiana. Plaintiff Poly Systems USA, Inc. ("Plaintiff" or "Poly Systems") is a New York corporation with its principal place of business located in Bayonne, New Jersey. Amended Compl. ¶ 1, ECF No. 4. Plaintiff develops, manufactures, and sells solvents for a variety of applications and industries. Amended Compl. ¶ 1. Defendant, a

speciality chemical company, is a Virginia corporation with its principal place of business located in Baton Rouge, Louisiana. Amended Compl. ¶ 2; Answer ¶ 2, ECF No. 9; Def.'s Mot. Br. 1, ECF No. 12-1. The principal dispute in this matter centers around an alleged contract between the companies, under which Defendant was to sell n-Propyl Bromide (the "Product") to Plaintiff. Amended Compl. ¶¶ 5-8; Answer ¶¶ 5-8. The parties do not agree that a contract was formed, and to the extent that a contract may have been formed, the parties disagree as to where the formation occurred.

Plaintiff asserts that a contract was formed, and that the formation occurred both in Louisiana and New Jersey, with the most significant aspects of Plaintiff's claim occurring in New Jersey. Dov Shellef ("Shellef") is the President of Poly Systems. Shellef states that an officer for Defendant named Tina Craft ("Craft") sent an offer letter to Plaintiff on November 12, 2010 (the "Offer Letter," Amended Compl. Ex. 1), offering to sell the Product for the price of $3.00 per kilogram, delivered.[1] Amended Compl. ¶ 5; Declaration of Dov Shellef ("Shellef Dec.") ¶ 9, ECF No. 14. Plaintiff argues that it accepted this offer on November 19, 2010, when it sent Defendant a purchase order for 270,000 kg of the Product, on a set delivery schedule running from January 3, 2011 through March 28, 2011 (the "Purchase Order," Amended Compl. Ex. 2). Amended Compl. ¶ 6. Plaintiff states that Defendant shipped 90,000 kg of the Product, but failed to ship the remaining 180,000 kg of the Product as required under the Purchase Order. Amended Compl. ¶ 7. Plaintiff thus instituted this lawsuit on August 8, 2011, seeking relief under breach of contract and promissory estoppel theories. Amended Compl. ¶¶ 9-17.

---

[1] While the parties disagree as to whether this letter constituted a legal offer, the Court refers to the document as the Offer Letter solely for the sake of ease.

Shellef states that he was in New Jersey for at least some of the communications between himself and Craft. "Shellef Dec." ¶ 10. Shellef further argues that Plaintiff's contacts with New Jersey run deeper than its contacts with New York, noting that while he does personally maintain a New York office, the "significant events– receipt of offers from Albemarle, issuance of purchase orders, receipt and non-receipt of goods, processing of payments, inability to meet customer demand due to Albemarle's breach– all took place in New Jersey." Shellef Dec. ¶ 11. Further, Shellef notes that Poly Systems' witnesses and business records are located in New Jersey, including Vice President Bill Rubinstein, who could testify about the impact of the alleged breach on sales, customer service employee Maryann Flora, who could testify about the effect the alleged breach had on customer relations, and plant manager Paul Hartnett, who would testify about inventory levels and efforts to cover. Shellef Dec. ¶ 12.

Defendant's submissions describe a markedly different scenario. Defendant agrees that it sent the Offer Letter to Plaintiff on November 12, 2010, and that it did supply some shipments of the Product to Plaintiff in 2010 and 2011, but that is where the parties cease to agree. Answer ¶ 5. According to Craft, Shellef contacted Albemarle in mid-2010 seeking to purchase the Product. Declaration of Tina D. Craft ("Craft Dec.") ¶ 3, ECF No. 12-2. Craft specifically points out that during their communications, Shellef provided her with a New York phone number for contact, and that the parties never met in New Jersey or communicated in New Jersey. Craft Dec. ¶ 4. Craft states that following this communication she sent an email to Shellef from Baton Rouge, containing the above referenced Offer Letter, and that one week letter, Plaintiff sent Defendant the Purchase Order. Craft Dec. ¶¶ 5, 6. Craft goes on to note, however, that she contacted Shellef shortly after this exchange of emails to inform him that Albermarle did not have the quantity of the Product

sought, and could only sell a portion of the requested Product, to which Shellef agreed.  Craft Dec. ¶ 7.  Pursuant to this agreement, Craft states that all of the Product supplied was manufactured in Defendant's Arkansas plant and packaged in Texas, where title to the Product transferred to Plaintiff.  Craft Dec. ¶11.  Plaintiff arranged for its own shipping from Texas for two of those shipments, and chose to have Defendant transport the other shipments.  Craft Dec. ¶ 11.  Craft states that while Shellef repeatedly contacted her seeking to enter into a long term agreement or to purchase more of the Product, she repeatedly declined such suggestions because Albermarle was unable to supply the requested amounts.  Craft Dec. ¶¶ 8-10.

Plaintiff, viewing Defendant's failure to ship all of the Product it intended to purchase as a breach of contract, filed the present action with this Court on August 9, 2011.  Complaint, ECF No. 1.  Plaintiff filed its Amended Complaint on August 15, 2011, correcting certain typographical errors.  Defendant filed its Answer on September 28, 2011, and filed the present Motion on October 11, 2011.  Plaintiff filed its Certification and Brief in Opposition on October 29, 2011.  ECF Nos. 14, 15.  Defendant filed a Reply on November 14, 2011.  ECF No. 16.  The matter is now before this Court.

## II.   STANDARD OF REVIEW

Where jurisdiction is founded only on diversity of citizenship, as it is in this matter, venue is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is

commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

A corporate defendant "resides" in "any judicial district where it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). A federal court sitting in diversity determines whether it has personal jurisdiction over a defendant by "apply[ing] the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution. In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir.1998).

A court's exercise of jurisdiction over an out-of-state defendant may be specific or general. Specific jurisdiction may be invoked if a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state" and the current claims "arise out of or relate to" the defendant's contacts with the forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir.1984). If so, a court must decide whether its exercise of jurisdiction over the defendant is reasonable and comports with basic notions of "fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). General jurisdiction is based upon a defendant's "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

In addition to the ability to transfer a case for improper venue pursuant to 28 U.S.C. § 1391(a), the Court may also transfer venue pursuant to 28 U.S.C. § 1404(a). That statute provides that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). An action might have been brought in another district, if (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the defendants. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir.1970).

In ruling on a motion under this provision, the court is free to consider "all relevant factors," and in this Circuit, the Court is directed to a list of certain private and public interest factors. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995). With regard to the private interests, courts consider factors such as the preferences of the parties, convenience of the parties as indicated by their relative physical and financial condition, convenience of the witnesses (to the extent that the witnesses may be unavailable for trial in one of the fora), location of books and records (to the extent that the files could not be produced in the alternative forum), and where the claim arose. Jumara, 55 F.3d at 879. With regard to the public interests, courts consider factors including a potential forum's local interest in the controversy, public policies of the forum, enforceability of judgment, practical considerations, court congestion, and the trial judge's familiarity with the applicable state law. Jumara, 55 F.3d at 879-80; AB Coaster Holdings, Inc. v. Icon Health & Fitness, Inc., No.10-6760, 2011 WL 6887724, at * 2 (D.N.J. Dec. 29, 2011).

The movant bears the burden of establishing the need for transfer. Jumara, 55 F.3d at 879. Further, it is "black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" Shutte,

431 F.2d at 25. A defendant must show that the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum" and if "when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir.1991).

### III. DISCUSSION

Defendant does not ask this Court to dismiss the action pursuant to 28 U.S.C. § 1391(a). Rather, Defendant seeks to have this action transferred to the Middle District of Louisiana pursuant to 28 U.S.C. § 1404(a). The first question before this Court, therefore, is "whether venue is proper in the proposed transferee district." S.O.S. Salson Inc. v. Academy Corp., No. 09-2159, 2009 WL 3110952, at *4 (D.N.J. Sept. 23, 2009) (citing Shutte, 431 F.2d at 22). On this issue, there is no dispute. Defendant is a Virginia corporation with its principal place of business located in Baton Rouge, Louisiana. Defendant is thus subject to personal jurisdiction in Louisiana, and venue is proper in the Middle District of Louisiana. The Court therefore turns to an evaluation of the private and public interest factors described in Jumara v. State Farm Ins. Co..

The first private factor for consideration is where the claim arose. "In a contract dispute, courts consider several specific factors that relate to where the claim arose, including (1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred." Allianz Life Ins. Co. of N. Am. v. Estate of Bleich, No. 08-668, 2008 U.S. Dist. LEXIS 90720, at *14 (D.N.J. Nov. 7, 2008) (internal quotation marks omitted). As noted above, the parties disagree about the issue of contract formation in the first place, and even if Defendant were to concede that a contract was formed, the parties disagree about where that

-7-

formation occurred. While Plaintiff argues that both performance and breach occurred in New Jersey when Defendant shipped some of the Product to New Jersey but failed to ship all of the Product sought, the more appropriate focus is on where the order was placed, and where the shipment originated from. A breach of contract occurs "where the alleged non conforming goods were manufactured, not their place of destination." Monarch Envtl., Inc. v. Velocitor Solutions, No. 11-3041, 2011 WL 4499270 (D.N.J. Sept. 27, 2011) (citing E.E. Cruz & Co., Inc. v. Alufab, Inc., Civ. No. 06–262, 2006 WL 1344095, at *6 (D.N.J. May 16, 2006)). Performance of the contract at issue would have occurred in Baton Rouge, where Defendant would have ordered the manufacture of the Product in Arkansas before transferring title of the Product to Plaintiff in Texas, and any failure to direct such production and shipment would likewise have occurred in Baton Rouge. Accordingly, this factor weighs heavily in favor of transfer.

The next factor to consider is the convenience of the parties as indicated by their relative physical and financial conditions. This factor weighs in favor of Plaintiff. Defendant's operations are primarily located in Louisiana, and Defendant does not maintain a permanent presence in New Jersey. Plaintiff, meanwhile, operates out of New Jersey and New York, and has no permanent presence in Louisiana. Thus, looking only at the parties' physical locations, this factor would be neutral. Plaintiff has presented evidence to this Court, however, suggesting that Defendant is a leading global developer, manufacturer, and marketer of specialty chemicals, which employs nearly 4,000 people and serves customers in approximately 100 countries. Shellef Dec. ¶ 2. Plaintiff avers that, in contrast to Defendant's global reach, Poly Systems is a "small business in Bayonne, New Jersey." Pl.'s Opp'n Br. 8. This information suggests that Defendant's size would permit it to more easily litigate this matter in New Jersey than Plaintiff could litigate this matter in Louisiana.

Defendant has not presented any arguments on this factor to the Court. This factor therefore weighs against transfer.

The convenience of the witnesses factor, however, weighs in favor of transfer. As neither party argues that their expected witnesses would be unavailable in either fora, the Court does not place significant weight on this factor. Given, however, that the critical issues of formation, performance, and breach occurred in Baton Rouge, the witnesses with the greatest knowledge of those issues would be more inconvenienced if this matter were litigated in New Jersey as opposed to Louisiana. Accordingly, this factor weighs in favor of transfer.

The final private interest factor requires consideration of the location of books and records. As the parties have noted, the relevant business records at issue are most likely electronic, thus negating the concern of transporting the originals. To the extent that such originals are necessary, however, the critical documents and physical evidence relating to performance and breach would be located in Louisiana. Accordingly, while the Court does not place significant weight on this factor, it does weigh in favor of transfer.

The Court now turns to a discussion of the public interest factors. The first such factor for consideration is the forum's local interest in the controversy. Generally, "when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest." S.O.S. Salson Inc., 2009 WL 3110952, at * 6 (citing Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V., No. 07-273, 2007 U.S. Dist. LEXIS 90857, at * 17(D.N.J. Dec. 11, 2007)). "In addition, the burden of jury duty 'ought not to be imposed upon the people of a community which have no relation to the litigation.'" Id. (citing Cancer Genetics, Inc., 2007 U.S. Dist. LEXIS 90857, at * 17). In this instance, a "substantial amount of the alleged culpable conduct"

did not occur in the chosen forum. Rather, as discussed above, the crucial events in this matter occurred in Louisiana, Arkansas, and Texas. Accordingly, the claims at issue have a stronger connection to the Middle District of Louisiana than to the District of New Jersey, and this factor therefore weighs in favor of transfer.

The question of familiarity with the applicable law, which recognizes "the desire to have [a] case tried before judges familiar with the applicable law," weighs in favor of transfer. Tischio v. Bontex, Inc., 16 F.Supp.2d 511, 521 (D.N.J.1998). Given Louisiana's local interest in this matter, it is appropriate to adjudicate the state law breach of contract claims at issue in the forum most familiar with Louisiana's law. See, e.g., Chesapeake Operating, Inc. v. Stratco Operating Co., Inc., No. 06-991, 2007 WL 788166, at *6 (W.D.Tex. March 14, 2007) (transferring breach of contract claim, noting that "the United States District Court for the Middle District of Louisiana is more familiar with Louisiana state law than the Western District of Texas.").

The remaining public factors have little impact on this Court's decision. As for the question of practical considerations, this factor parallels the convenience of the parties and witnesses analysis discussed above, and need not be reiterated here. Finally, the issue of court congestion does not appear to weigh in favor of either party.

While mindful that the Plaintiff's choice of forum should not be disturbed lightly, the Court concludes, upon a balancing of the above discussed factors, that this matter will be transferred to the Middle District of Louisiana.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion is **granted**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh<br>Dennis M. Cavanaugh, U.S.D.J.

Date:     May  22 , 2012
Orig.:    Clerk
cc:       All Counsel of Record
          Hon. Joseph A. Dickson, U.S.M.J.
          File